## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NINEVEH INVESTMENTS LIMITED, | |
| Plaintiff, | Civil Action No. 16-cv-01068-JD |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPLICATION OF FOREIGN LAW PURSUANT TO FEDERAL RULE OF <u>CIVIL PROCEDURE 44.1</u>

Plaintiff Nineveh Investments Limited ("Nineveh") files this Memorandum of Law in support of its Motion for Application of Foreign Law Pursuant to Federal Rule of Civil Procedure 44.1.

### <u>Preliminary Statement</u>

This case involves foreign assets generated from the sale of a foreign business placed in a foreign trust governed by foreign law. Those assets have now been improperly caught in the middle of a long-standing tax dispute between Defendant the United States Government ("Defendant") and the owner of that foreign business, Gary Kaplan, who happens to be a United Sates citizen who has lived outside the United States for decades, including at all times when the business was operated and sold, the assets generated and the foreign trust established.

Plaintiff Nineveh is a wholly-owned underlying company of the Kaplan Family Trust ("KFT"), an irrevocable, fully discretionary Bahamian trust that has four beneficiaries, including Mr. Kaplan. Mr. Kaplan has a tax debt to the U.S. exceeding $50 million. In February 2016, the

IRS issued notices of levy on two accounts held by Nineveh in order to satisfy Mr. Kaplan's tax obligations, accounts in which Mr. Kaplan did not have any property rights. Because the accounts belonged to Nineveh, not Mr. Kaplan, the IRS levied the assets by claiming that Nineveh was Mr. Kaplan's "nominee." This unfounded assertion did not satisfy the requirement that the taxpayer have a property interest in the assets being levied.

On March 4, 2016, Nineveh commenced the present action, explaining that the aforementioned levies were improper because the assets are owned and controlled by Nineveh, not Mr. Kaplan, and cannot be used to satisfy Mr. Kaplan's tax obligations. Nineveh seeks the release of all funds and other property subject to the levies.

The key issue in this case is whether Mr. Kaplan, the taxpayer, has a property interest in the assets of Nineveh and the KFT sufficient to subject those assets to a federal tax lien. The threshold question is: what law applies to determine if Mr. Kaplan has such an interest? U.S. Supreme Court precedent requires turning state law.[1]

The relevant state law in this case is the law of the Commonwealth of the Bahamas. On July 6, 2017, the Bahamian Supreme Court confirmed as much when it entered an Order finding, among other things, that Nineveh's assets are legally and beneficially owned by the trustees of the KFT, and do not form a part of the personal assets of Mr. Kaplan. The Bahamian Supreme Court further concluded that Mr. Kaplan did not have any right to mandatory distributions from the KFT, to use KFT assets or to exclude others from such use, or to transfer or assign any KFT assets. Thus, Mr. Kaplan did not have any of the indicia of a property interest in the assets of Nineveh or

---

[1] Nineveh submits the present Motion as notice of the application of Bahamian law pursuant to Federal Rule of Civil Procedure 44.1, which provides that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."

the KFT.  Notably, Defendant was provided with full notice of the Bahamian Supreme Court proceedings, was invited to participate, could have participated, but chose not to.

In sum, not only does U.S. Supreme Court precedent warrant that Bahamian law govern critical issues this action, but such law has already been determined by the Bahamian Supreme Court—specifically, the nature of the taxpayer's interest in Nineveh's and the KFT's assets.  And under well-accepted principles of comity, this Court should adopt the conclusions of the Bahamian Supreme Court set forth in its July 6, 2017 Order, an Order which unambiguously declares the nature of Mr. Kaplan's property rights and interests in relation to the KFT and Nineveh.

## I.  <u>Relevant Factual and Procedural History</u>

### A.  **Mr. Kaplan's Transfer of His Interests in BetOnSports PLC to the Bird Charitable Trust and Bird Purpose Trust**

Mr. Kaplan is a U.S. citizen who lived abroad from 1989 until 2007, and from 2014 to the present.  (Dkt. No. 1, Compl. ¶ 10.)  In 2004, Mr. Kaplan settled two trusts: the Bird Charitable Trust and the Bird Purpose Trust (the "Bird Trusts").  (*Id.* ¶ 15.)  Mr. Kaplan transferred his interest in a company called BetOnSports, PLC to Boulder Overseas Corp., which was owned by the Bird Trusts.  The Bird Trusts sold BetOnSports PLC through a public offering on the London Stock Exchange in 2004 and a subsequent private placement in 2005.  The approximately $100 million earned from the sale of BetOnSports was held by the Bird Trusts.

In 2009, Mr. Kaplan entered a guilty plea in federal court in St. Louis to charges related to the gambling operations of BetOnSports.  In connection with his guilty plea, Mr. Kaplan paid a forfeiture of $43,650,000 to the U.S. Treasury.  Mr. Kaplan obtained the funds to pay the forfeiture from the Bird Trusts after requesting, and receiving, the consent of the Bird Trusts' trustees, the Protector of the Bird Trusts, and Holly Kaplan (a beneficiary of the Bird Trusts, both individually

3

and as guardian of her and Mr. Kaplan's children, who were also beneficiaries but were minors at the time).

### B.   The Creation of the Kaplan Family Trust

In 2010, the KFT was created as a successor to the Bird Trusts.  (*Id.* ¶ 17.)  The KFT is administered by a regulated trust company, Equity Bank & Trust ("EBT"), and has four discretionary beneficiaries: Mr. Kaplan, his ex-wife Holly, and their two now adult children, Hunter and Remy.  The protector is Michael Hunter, a lawyer in Israel.  The KFT's trustees created Nineveh to serve as the underlying company for KFT's financial assets, (*id.* ¶¶ 22-23), including the funds that remained after the distribution was made for Mr. Kaplan's forfeiture.

### C.   The IRS's Levies of Nineveh's Assets

In connection with its role as the underlying company for the KFT, Nineveh has funds invested through Brown Brothers Harriman ("Brown Brothers").  (*Id.* ¶ 28.)  In November 2015, the IRS issued notices of levy on Brown Brothers, seeking to levy funds held by Nineveh in order to satisfy Mr. Kaplan's tax obligations.  (*Id.* ¶ 32.)  The funds were held by two foreign financial institutions: Pictet & Cie and Edmond de Rothschild SA.  (*Id.* ¶¶ 26-28.)  The levies improperly named the account holder as Gary Kaplan.  (*Id.* ¶ 32.)  Because the funds belonged to Nineveh, not Mr. Kaplan, Brown Brothers would not honor the levies.

On February 24, 2016, the IRS, arguing that Nineveh was Mr. Kaplan's "nominee," issued the notices of levy again, and seized the funds held in the Brown Brothers account.  (*Id.* ¶ 32.)[2] On March 4, 2016, Nineveh commenced the present wrongful levy action.  Among other things, Nineveh's Complaint alleges that the aforementioned levies were improper because the assets are

---

[2]      The IRS also levied on interests in two limited liability companies that hold Georgia real estate, and another company called Nak Investments LLC, which purchased the property in St. Louis where Mr. Kaplan resided with his family shortly after his release from prison and before he returned to Costa Rica. Those levies are not at issue in this lawsuit.

4

owned and controlled by Nineveh, not Mr. Kaplan, and that Mr. Kaplan does not have a leviable property interest in those assets.  Nineveh seeks the release of all funds and other property seized pursuant to the levies.

**D.**     **The Supreme Court of the Bahamas Issues an Order Declaring That Nineveh's Assets are Owned by EBT, Not Mr. Kaplan**

In response to the IRS's decision to levy Nineveh's assets, Nineveh and EBT filed an Originating Summons against Mr. Kaplan in the Supreme Court of the Commonwealth of the Bahamas on February 19, 2016 (the "Bahamian Action").  *See* **Exhibit A**, Declaration of Jed M. Silversmith ("Silversmith Decl.") ¶ 7.  The Originating Summons sought an Order determining certain attributes of the KFT and the rights of Mr. Kaplan therein.  *Id.* ¶ 8.  Defendant was given notice of the Bahamian Action and afforded an opportunity to be heard in that matter.  Specifically, on April 13, 2016, counsel for Nineveh forwarded a copy of the Originating Summons and the accompanying supporting papers to Defendant's counsel.  *Id.* ¶ 9.  On June 7, 2016, counsel for Nineveh attended a meeting in St. Louis with Defendant's counsel and others, and invited them to participate in the Bahamian Action.  *Id.* ¶¶ 10-11.  Defendant voluntarily chose not to participate in the Bahamian Action.  *Id.* ¶ 12.

On July 5, 2017 Nineveh filed a Supplemental Affidavit in the Bahamian Action, attaching the Summons and Complaint in this action, Defendant's Answer, and documents relating to discretionary distributions made by the KFT.  A copy of the Supplemental Affidavit is attached hereto as **Exhibit B**.[3]  Thus, notwithstanding Defendant's refusal to participate in the Bahamian Action, the Bahamian Supreme Court was fully aware of Defendant's position regarding Mr. Kaplan's rights and interests in the KFT.

---

[3]     Because the specific documents related to the discretionary distributions are not necessary to the disposition of the present Motion, they are not included within **Exhibit B**.

On July 6, 2017, the Bahamian Supreme Court entered an Order (the "July 2017 Order") in which it found, among other things, that "[t]he Commonwealth of The Bahamas is the proper jurisdiction to adjudicate upon issues relating to the [KFT]." *See* July 2017 Order ¶ 3, a copy of which is attached to this Motion as **Exhibit C**. The Bahamian Supreme Court further concluded that "[t]he assets of Nineveh . . . the First Plaintiff herein are legally and beneficially owned by [EBT], as trustee of the [KFT], the Second Plaintiff herein and do not form a part of the personal assets of [Mr.] Kaplan, the Defendant herein[.]" *Id.* ¶ 1. The July 2017 Order was certified on July 24, 2017.

## II.     Standard of Review

Federal Rule of Civil Procedure 44.1 provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1. "Under Rule 44.1, it is incumbent upon the parties to 'carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case.'" *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 469 (E.D. Pa. 2010) (quoting *Bel-Ray Co., Inc. v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999)).

## III.    Argument – The Court Should Apply Bahamian Law to All Questions Related to Property Rights and Interests in the KFT

### A.     Only Bahamian Law Can Apply to Legal Questions Concerning the KFT and Any Property Rights Therein

Whether Mr. Kaplan's interest in the KFT constitutes "property and rights to property" subject to levy for his tax debt under the provisions of the Internal Revenue Code (26 U.S.C. §

6321) is ultimately a question of federal law.  The answer, however, depends on state law.  As the

U.S. Supreme Court has recognized:

> ***We look initially to state law determine what rights the taxpayer
> has in the property the Government seeks to reach***, then to federal
> law to determine whether the taxpayer's state-delineated rights
> qualify as "property" or "rights to property" within the compass of
> the federal tax lien legislation. Cf. *Morgan v. Commissioner*, 309
> U.S. 78, 80 (1940) ("State law creates legal interests and rights.  The
> federal revenue acts designate what interests or rights, so created,
> shall be taxed.").

*Drye v. U.S.*, 528 U.S. 49, 58 (1999) (emphasis added); *see also U.S. v. Craft*, 535 U.S. 274, 278

(2002) ("The federal tax lien statute itself 'creates no property rights but merely attaches

consequences, federally defined, to rights created under state law.'") (quoting *United States v.*

*Bess,* 357 U.S. 51, 55 (1958)); *Aquilino v. United States*, 363 U.S. 509, 513 (1960).

   Reference to "state law" is not a constitutional requirement or deference as a matter of

policy; it is a recognition that there is no federal trust or property law.  As the Supreme Court

recognized in *Drye*, *Craft*, and its predecessors, one must look to the laws of the jurisdiction under

which the trust was created, its assets are governed, and the rights of its beneficiaries determined.

In situations where no U.S. state meets this criteria, "state" law can only reasonably be interpreted

to mean the local law of the jurisdiction where these events occurred.  Indeed, as used in tax law,

references to "states" often include foreign countries.[4]

   The U.S. Supreme Court has held that courts should examine several types of state law

property rights—sometimes referred to as a "bundle of sticks"—in order to determine whether a

---

[4]      For example, U.S. tax treaties commonly refer to both the U.S. and the counterpart countries as
contracting "states."  *See, e.g.*, Convention Between the Government of the United States of America and
the Government of the United Kingdom of Great Britain and Northern Ireland for the Avoidance of Double
Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and on Capital Gains
("Except as specifically provided herein, this Convention is applicable only to persons who are residents of
one or both of the Contracting States.").

party has property rights sufficient under federal law to be subject to an IRS levy.  *Craft*, 535 U.S. at 279.  The U.S. Supreme Court has identified the right to use property, the right to receive income produced by it, and the right to exclude others from it as among "the most essential property rights."  *Id.* at 283.

Here, there is no law of any state of the United States applicable to determining the rights or interests of Mr. Kaplan in the KFT.  Rather, this case involves the IRS's levy of assets belonging to a Bahamian trust that is expressly governed by Bahamian law.  Indeed, in its Answer to the Complaint, Defendant admits that the KFT was formed under Bahamian law.  (Dkt. No. 3, Answer ¶ 18.)  Accordingly, Bahamian law must govern the question of Mr. Kaplan's rights in and to the KFT.

Earlier this year, the Supreme Court of the Commonwealth of the Bahamas, in an open proceeding in which Defendant was invited to participate but declined to do so, ruled on these matters and found that Bahamian law was the exclusive law under which the rights of beneficiaries in the KFT should be determined, and that none of the KFT's beneficiaries, including Mr. Kaplan, is entitled, as a matter of right, to:

      i.      any mandatory distribution from the Trust;

      ii.     any distribution of any amount or percentage of any Trust income or principal, other than as may be determined from time to time by the Trustee in its' discretion;

      iii.    any distribution from the Trust, of income or principal, for support or otherwise, other than as may be determined from time to time by the Trustee in its' discretion;

      iv.    demand any distribution from the Trust for his or her own benefit or for the benefit of another;

      v.     use Trust assets or to exclude others from such use;

8

> vi.   dictate the distribution of any Trust assets upon his or her death;
>
> vii.   transfer, assign, anticipate, sell, mortgage or otherwise deal in any way in or with Trust assets or with all part of any interest as a discretionary beneficiary of the Trust.

**Exhibit C**, July 2017 Order ¶ 2(b).

The Bahamian Supreme Court, being fairly informed of both Nineveh's and Defendant's position on the issue in this case, and having been advised of the terms of the KFT Agreement, as well as how the KFT made distributions, determined *inter alia*, that Mr. Kaplan, like the other beneficiaries, has no right to use or enjoy trust property; no right to distributions (all distributions being fully discretionary by a respected and highly regulated independent trust company); and has none of the other "sticks" described in *Craft*.

In sum, under Bahamian law (the July 2017 Order), Mr. Kaplan has none of the rights deemed essential by *Craft*, and therefore cannot be held to have a property interest in the KFT sufficient to subject its, or Nineveh's, assets to levy for Mr. Kaplan's taxes.

### B.    The Court Should Apply Principles of Comity and Adopt the Findings of the Supreme Court of the Bahamas

In addition to the U.S. Supreme Court's precedent warranting the application of Bahamian law, under principles of comity, this Court should adopt the Bahamian Supreme Court's conclusions and apply them to the present action.

### 1.    Relevant Law Governing Comity

The United States Court of Appeals for the Third Circuit has recognized that "[i]nternational comity is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 392 (3d Cir.

9

2006) (citations and quotations omitted).   In general, "United States courts will defer to proceedings taking place in foreign countries, and will allow those acts and proceedings to have extraterritorial effect in the United States." *Id.* (citations omitted).

In assessing whether to enforce a foreign judgment, the Third Circuit has held as follows:

> "When an action is brought in a court of this country by a citizen of a foreign country against one of our own citizens . . . and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect."

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440-41 (3rd Cir. 1972) (quoting *Hilton v. Guyot*, 159 U.S. 113, 205 (1895)).

## 2. The Court Should Adopt the Findings of the Bahamian Supreme Court's July 2017 Order

As discussed above, this matter arises from Defendant's levy of Nineveh's account with Brown Brothers in order to satisfy taxes owed by Mr. Kaplan.  Because the account was held in Nineveh's name, however, Defendant was unable to levy the assets without claiming that Nineveh was Mr. Kaplan's nominee.  In other words, Defendant concluded that for purposes of satisfying Mr. Kaplan's tax obligations, there was no distinction between the assets of the KFT (including those held by Nineveh) and the assets of Mr. Kaplan.  This "conclusion" was before the Supreme Court of the Bahamas and, as discussed above, was rejected by that Court when it found in its July 2017 Order that Nineveh's assets are legally and beneficially owned by EBT as trustee for the

10

KFT, and do not form a part of the personal assets of Mr. Kaplan.  **Exhibit C**, July 2017 Order ¶ 1.

Defendant, whose position on the relevant issues was fairly stated in the Originating Summons and Supporting Affidavit, and whose Answer in this case was before the Bahamian Supreme Court, was notified of the Bahamian Action and was invited to participate.  **Exhibit A**, Silversmith Decl. ¶¶ 9-11.  Defendant could have presented further information to the Bahamian Supreme Court if it wished, but it voluntarily chose not to.  *Id.* ¶ 12.  Defendant's absence from the Bahamian Action therefore cannot be cited as a reason to decline adopting the conclusions in the July 2017 Order.[5]

Moreover, while Defendant has an interest in collecting taxes, it also has an obligation to respect the rule of law, both its own and that of friendly nations.  Here, Defendant's determination that it could levy Nineveh's assets because it is a "nominee" of Mr. Kaplan is premised upon its conclusion that those assets belong to Mr. Kaplan—a conclusion that is expressly at odds with the Bahamian Supreme Court's July 2017 Order.  While Defendant is free to pursue its tax judgment against Mr. Kaplan directly (and has), it cannot secure that judgment by placing improper levies upon Nineveh's assets, in which he has no property interest.

In sum, because U.S. Supreme Court precedent dictates that local (i.e. "state") law of the trust should apply to this dispute, and the doctrine of comity requires deference to the Bahamian Supreme Court's decision on legal issues pertaining to the KFT, Nineveh respectfully requests that the Court adopt and apply to the present matter the findings set forth in the Bahamian Supreme Court's July 2017 Order.

---

[5]     Defendant has objected to certain of Nineveh's discovery requests seeking information about the Bahamian Action and Bahamian law on the grounds that such requests are irrelevant and have no bearing on this action.  Given that the Bahamian Supreme Court applied Bahamian law to many of the exact same issues pending in this case, Defendant's position is entirely untenable.

147339.00601/106254158v.3

IV.    **Conclusion**

For all of the foregoing reasons, Nineveh respectfully requests that the Court grant its

Motion and enter an Order in the form attached herewith.


Dated: October 23, 2017                          **BLANK ROME LLP**

                                                 By: */s/    Jason A. Snyderman*_____

                                                 JASON A. SNYDERMAN
                                                 215-569-5774
                                                 snyderman@blankrome.com
                                                 JED M. SILVERSMITH
                                                 215-569-5789
                                                 jsilversmith@blankrome.com
                                                 JOHN P. WIXTED
                                                 215-569-5649
                                                 jwixted@blankrome.com
                                                 ONE LOGAN SQUARE
                                                 130 N. 18th STREET
                                                 PHILADELPHIA, PA 19103

                                                 CARLOS F. ORTIZ
                                                 301 CARNEGIE CENTER 3rd FL
                                                 PRINCETON, NJ 08540
                                                 609-750-2641
                                                 cortiz@blankrome.com

                                                 MAYLING C. BLANCO
                                                 THE CHRYSLER BLDG.
                                                 405 LEXINGTON AVE
                                                 NEW YORK, NY 10174-0208
                                                 212-885-5502
                                                 mblanco@blankrome.com

                                                 *Attorneys for Nineveh Investments*
                                                 *Limited*

147339.00601/106254158v.3