IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GARY KAPLAN, )<br>)<br>Defendant. )<br>_____ ) | Case No. 2:16-cv-01068-JD |

**THE UNITED STATES' OPPOSITION TO
NINEVEH'S MOTION FOR APPLICATION OF FOREIGN LAW**

Nineveh has moved, ostensibly under Federal Rule of Civil Procedure 44.1, for orders: (1) applying Bahamian law to this action; and (2) adopting a judgment entered by a court in the Bahamas in a case to which the United States was not a party (the "Bahamian Order").  (*See* Doc. 37.)

Nineveh's motion is facially deficient.  With regard to Bahamian law, Nineveh fails to state the substance of the law it believes is applicable.  Under Rule 44.1, that failure precludes the relief sought.  Moreover, Bahamian law is irrelevant to the determination, as a matter of *federal* law, of whether the United States tax liens encumber the Kaplan Family Trust's assets.  With regard to the Bahamian Order, the principles of comity dictate that the United States cannot be bound by the Bahamian court's decision; the United States was not a party to that action and such lower level decisions cannot bind federal adjudication of tax controversies.  This Court, therefore, should deny Nineveh's motion in its entirety.

15958994.2

# BACKGROUND

**1.    Nineveh's assets are derived from the same stock sale that generated Gary Kaplan's tax liability.**

Nineveh states "[t]his case involves foreign assets generated from the sale of a foreign business placed in a foreign trust governed by foreign law." (Doc. 37-1 at 1.) It asserts "[t]hose assets have now been improperly caught in the middle of a long-standing tax dispute between" the United States and Gary Kaplan. (*Id.*)  In fact, the assets at issue in this case are U.S. securities located in a bank account in the United States. (*See* Doc. 1, ¶¶9, 28-30.)  The United States seeks to levy those domestic assets to partially satisfy Gary Kaplan's $60+ million judgment owed to the United States.

Both the assets used to purchase the securities and the tax liability at the center of this dispute were generated by the same sale of shares in Gary Kaplan's business. The Kaplan Family Trust is the successor to the Bird Purpose and Bird Charitable Trusts (the "Bird Trusts"). (*See* Ex. A, attached hereto.) The Bird Trusts were created for the express purpose of shielding the proceeds of the sale -- used to purchase the U.S. securities -- from Gary Kaplan's creditors. As the United States Tax Court stated:

> Before July 2004 BetOnSports' assets were held by Boulder Overseas Corp. (Boulder), a corporation that [Gary Kaplan] wholly owned. In July 2004 BetOnSports, PLC (PLC) went public on the London Stock Exchange. In order to effect the initial public offering (IPO), PLC purchased the assets of BetOnSports from Boulder in exchange for shares of PLC and cash. In anticipation of the IPO, [Gary Kaplan] transferred his shares in Boulder to several trusts based in the Isle of Jersey (Bird Trusts). [Gary Kaplan] was the protector of the Bird Trusts, and Basel Trust Corp. (Channel Islands) Ltd. (Basel), was the sole trustee from the date of their creation through at least July 17, 2006. [Gary Kaplan] and his family were the intended beneficiaries of the Bird Trusts. From the

> date of their creation until [Gary Kaplan's] indictment in 2006, the Bird Trusts made discretionary distributions to [Gary Kaplan] and his family on which they lived.
>
> …
>
> As part of PLC's IPO [Gary Kaplan] sold 19 million PLC shares through Boulder for approximately $48 million and transferred the proceeds into various bank and investment accounts in Switzerland and the Isle of Jersey. In July 2005 [Gary Kaplan] sold another 23 million PLC shares through Boulder for approximately $49 million and again transferred the proceeds into various bank and investment accounts in Switzerland and the Isle of Jersey. Boulder had no basis in any of these PLC shares.

*Kaplan v. Comm'r*, T.C. Memo. 2014-43, at *2 (2014), *aff'd* 795 F.3d 808 (8th Cir. 2015).

The Tax Court held Gary Kaplan was properly taxed with the capital gains related to the sale of the Bird Trusts' shares of BetOnSports.

> A grantor trust is created when a person contributes cash or property to a trust but retains certain interests such that he is treated as the owner of the trust. *See* secs. 671–679. "When a grantor or other person has certain powers in respect of trust property that are tantamount to dominion and control over such property, the Code 'looks through' the trust form and deems such grantor or other person to be the owner of the trust property and attributes the trust income to such person." *Estate of O'Connor v. Commissioner*, 69 T.C. 165, 174, 1977 WL 3664 (1977). Under section 671, the grantor of a grantor trust is treated "as the owner of the trust assets, thus making the trust assets taxable to the grantor, until those trust assets are distributed to the grantee." *Resolution Trust Corp. v. MacKenzie*, 60 F.3d 972, 976–977 (2d Cir.1995). A grantor trust is disregarded as a separate taxable entity to the extent of the grantor's retained interest, and the grantor must report the trust's income on his own return. Sec. 671; sec. 1.671–2(b), Income Tax Regs.
> …
> On brief [Gary Kaplan] concedes that the Bird Trusts were grantor trusts. [Gary Kaplan] further concedes that the income of the Bird Trusts was taxable to him as the trusts' grantor under section 679.

*Kaplan*, T.C. Memo. 2014-43, at *7.

Thus, contrary to Nineveh's characterization, the assets at issue are inextricably intertwined with Gary Kaplan's tax liability.

**2.    Federal tax liens encumber the Kaplan Family Trust's assets.**

This Court must evaluate Nineveh's request to apply Bahamian law and adopt the Bahamian Order within the context of the claims at issue in this case. Federal tax liens encumber all of Gary Kaplan's property and rights to property held on or acquired after the dates upon which the federal income tax liabilities were assessed against him (*i.e.*, July 15, 2014). The United States contends those federal tax liens encumber all assets held by the Kaplan Family Trust, including the Nineveh accounts at issue in this case. The United States bases its contention upon several legal doctrines as applied to the facts of the case.

**A.    The Kaplan Family Trust is a *de facto* revocable trust because Gary Kaplan has the effective power to end it at any time.**

The United States primarily contends that, under the Settlement terms, the Kaplan Family Trust is a *de facto* revocable trust, which is a trust that, despite its terms, can be revoked at any time by Gary Kaplan, the grantor. As discussed below, the federal tax lien permits the United States to step into Gary Kaplan's shoes to exercise any right to property he may have with regard to the assets at issue.

Although the Settlement refers to Gary Kaplan as the "Settlor" of the Kaplan Family Trust, that term is synonymous with grantor. (*See* Ex. A, § 6.3.) By virtue of the federal tax liens, the United States can exercise any right Gary Kaplan has as grantor under the terms of the Settlement, which includes the authority to remove the protector

at any point, with or without cause, and to appoint a new protector. (*See id.*, §§ 6.3 ("The Settlor during his lifetime and if not incapacitated is authorized to appoint any successor or additional Protector."), 6.13 ("Notwithstanding anything in this Clause 6 to the contrary, the Settlor during his lifetime and while he is not Incapacitated shall have the power to remove Protectors, with or without cause, and to appoint replacements for Protectors so removed.").) Through this power of appointment and removal, Kaplan has effective control over the actions and decisions of the protector of the Kaplan Family Trust. In reality, the protector serves at the pleasure of Gary Kaplan.

The settlement in turn gives the protector the authority to appoint and remove trustees at any point, with or without cause. (*See id.*, §§ 12.1 ("The power of removing Trustees and appointing new or additional Trustees shall be vested in the Protector for the time being hereof . . ."), 12.3 ("The power of removing a Trustee hereunder shall be exercisable without any reason being given for such removal.").) Through this power of appointment and removal, the protector has effective control over the actions and decisions of the trustee of the Kaplan Family Trust.

The trustee is authorized to make distributions and otherwise dispose of the trust's assets. The trustee is also authorized to end the trust at any time. (*See id.*, 1.6 (defining the "Trust Period" as "the perpetuity period beginning on the date of the deed of the Bird Charitable Trust (to wit, January 16, 2004) and ending on the first to happen of the following dates and/or events: . . . b) such earlier date as the Trustees (with the prior consent in writing of the Protector subject to Clause 6.12(b) hereof) shall declare in writing to be the date on which the Trust Period shall end (not being a date earlier than

the date of such declaration)." (The Settlement does not contain a clause 6.12; rather, the Settlement skips from clause 6.10 to 6.13.)

Based on the chain of authority governing the Kaplan Family Trust, the United States contends Gary Kaplan has effective dominion and control over assets of the Kaplan Family Trust and, by extension, Nineveh, because he has the effective power to end the trust at any time. The Kaplan Family Trust is therefore *de facto* revocable.

### B. Gary Kaplan fraudulently conveyed the assets at issue.

In addition, the United States contends that the funding of the Bird Trusts in 2004 and the amendment of the Kaplan Family Trust in 2010 were fraudulent conveyances. The funding of the Bird Trusts was fraudulent because Gary Kaplan "placed BetOnSports in trust on the advice of his attorney and the investment bankers handling the IPO in order to shield the company's assets from general creditors." *Kaplan*, T.C. Memo. 2014-43at *2 n.3. The Bird Trusts were amended and renamed the Kaplan Family Trust in an attempt to shield the trust's assets from the United States by, amongst other things, removing Kaplan as protector and changing the trust's term from revocable to nominally irrevocable. Because those transfers were fraudulent, federal tax liens encumber all of the assets of the Kaplan Family Trust.

### C. The Kaplan Family Trust is Gary Kaplan's Nominee or Alter Ego.

The United States also contends the Kaplan Family Trust and, by extension, Nineveh are nominees or alter egos of Gary Kaplan, because he has active and substantial control over all aspects of the trust and its assets. When the trusts were initially funded in 2004, Kaplan transferred all of his meaningful, valuable assets to the

trust, rendering himself insolvent. However, he retains control over the trust, including decisions on distributions, amendments to the trust, and the appointment and removal of the protector and the trustee. The trust pays for all of Gary Kaplan's bills and living expenses, including his Missouri taxes, and he has unlimited access to the trust's assets. There is also no purpose for the trust other than to shield his assets. The trust form, therefore, is a sham because it lacks economic substance. Under federal nominee law, the trust form is disregarded.

## ARGUMENT

I. **NINEVEH HAS NOT SUBSTANTIATED ITS REQUEST TO APPLY BAHAMIAN LAW**

   A. **Nineveh's motion is facially deficient.**

Federal Rule of Civil Procedure 44.1 controls the application of foreign law in federal court. *See Bel–Ray, Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999). The Rule provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1. Inherent in Rule 44.1 is the policy determination "that whenever possible issues of foreign law should be resolved on their merits and on the basis of a full presentation and evaluation of the available materials." 9A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2444 (3d ed. 2008). Thus, the party seeking to apply foreign law -- in this case, Nineveh -- is required to "carry both the burden of

raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case." *Bel–Ray*, 181 F.3d at 440 (citing *Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 221 (7th Cir. 1996)); Restatement (Second) Conflict of Laws § 136 cmt. f (1971) ("the party who claims that the foreign law is different from the local law of the forum has the burden of establishing the content of the foreign law").

      If Nineveh fails to satisfy both of these burdens, its motion must be denied and the law of this forum applies. *See Bel-Ray*, 181 F.3d at 441 (finding that where a litigant failed to raise the issue of whether South African contract law applied and failed to provide any evidence as to the substance of that foreign law, it was appropriate to apply the law of the forum); *Walter v. Neth. Mead N.V.*, 514 F.2d 1130, 1137 n.14 (3d Cir. 1975) (concluding that although the law of the Netherlands ostensibly applied, where a party did not conclusively establish the foreign law, the court should assume it is consistent with the law of the forum); Restatement (Second) Conflict of Laws § 136 cmt. h (1971) ("where either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own law, except when to do so would not meet the needs of the case or would not be in the interests of justice").

      Although Nineveh asserts Bahamian law applies, it fails to state the substance of such law. Rather, Nineveh appears to stand solely on the Bahamian Order for the content of applicable Bahamian law. (*See* Doc. 37-1 at 9 ("under Bahamian law (the July 2017 Order), Mr. Kaplan has none of the rights deemed essential by *Craft*").) But the

Bahamian Order itself does not state the substance of Bahamian law. (*See* Doc. 37-4.) Instead, the order merely states conclusions regarding the rights of the Kaplan Family Trust beneficiaries, taken verbatim from the trustee's supporting declaration. (*Compare* Doc. 37-3, ¶13 *with* Doc. 37-4 at 6-7.) Because Nineveh has failed to state the substance of Bahamian law, its motion is facially deficient and must be denied. If and when Nineveh makes the required showing under Rule 44.1, the United States will address the substance of any such law at that time.

### B. Bahamian law is irrelevant to the resolution of this case.

Not only does Nineveh fail to provide the substance of Bahamian law, it also fails to explain how Bahamian law affects the resolution of this case. Nineveh states only "under Bahamian law (the July 2017 Order), Mr. Kaplan has none of the rights deemed essential by *Craft*, and therefore cannot be held to have a property interest in the KFT sufficient to subject its, or Nineveh's, assets to levy for Mr. Kaplan's taxes." (Doc. 37-1 at 9.) Under longstanding Supreme Court precedent and the facts of this case, Bahamian law has no effect on the ultimate question in this case; namely do the United States' tax liens, as a matter of *federal* law, encumber the Kaplan Family Trust's assets? Because the Court need not apply Bahamian law in answering that question, Nineveh's motion should be denied.

Under 26 U.S.C. § 6321, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon *all property and*

***rights to property***, whether real or personal, belonging to such person." (Emphasis added.) The statutory language "all property and rights to property" is broad and "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985). Indeed, "[s]tronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank v. United States*, 326 U.S. 265, 267 (1945).

Section 6321 "attaches consequences, federally defined, to rights created under state law." *United States v. Bess*, 357 U.S. 51, 55 (1958). The United States contends its tax liens encumber Gary Kaplan's interest in all of the assets held by the Kaplan Family Trust and, by extension, Nineveh. The question of whether his interest in those assets constitutes "property or rights to property" under section 6321 "is ultimately a question of federal law." *United States v. Craft*, 535 U.S. 274, 278 (2002). In answering that question, this Court must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye v. United States*, 528 U.S. 49, 58 (1999). The Supreme Court describes the analysis as follows:

> A common idiom describes property as a "bundle of sticks"—a collection of individual rights which, in certain combinations, constitute property. *See* B. Cardozo, Paradoxes of Legal Science 129 (1928) (reprint 2000); *see also Dickman v. Commissioner*, 465 U.S. 330, 336 (1984). State law determines only which sticks are in a person's bundle. Whether those sticks qualify as "property" for purposes of the federal tax lien statute is a question of federal law.

> In looking to state law, we must be careful to consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them. Such state law labels are irrelevant to the federal question of which bundles of rights constitute property that may be attached by a federal tax lien.

*Craft*, 535 U.S. at 278-79.

Whether state law would preclude a creditor other than the United States from encumbering a particular interest in property or rights to property is irrelevant, because federal law "controls the ultimate issue of whether a taxpayer has a beneficial interest" in particular property or rights to property. *Drye*, 528 U.S. at 57. Thus, the Supreme Court held a taxpayer's right under state law to withdraw the entirety of the proceeds from a joint bank account was subject to the United States' lien under section 6321 and levy under section 6331, even though state law would not allow ordinary creditors to encumber and deplete the account. *See Nat'l Bank*, 472 U.S. at 723-27. Likewise, the right under a life insurance policy to compel an insurer to pay cash surrender value under the policy was a right to property subject to attachment, even though state law shielded cash surrender value from other creditors' liens. *See Bess*, 357 U.S. at 56-57. In *Drye*, an heir subject to a federal tax lien disclaimed his interest in his mother's estate, which under state law created the "legal fiction" that he predeceased his mother and thus never held a property interest in the estate. *See* 528 U.S. at 52-54. The Supreme Court concluded that his right to accept an inheritance or pass it along to another, constituted a "right to property" subject to section 6321, despite the state law disclaimer. *See id.* at 59-61. And in *Craft*, the Court held that federal tax liens encumber

property held by a delinquent taxpayer as a tenant by the entirety, even though state law created the legal fiction that neither property owner held a separate interest in the entireties property subject to encumbrance. *See* 535 U.S. at 276.

Bahamian law is irrelevant under any of the United States' theories in this case. As a matter of *federal* law, the United States' tax liens encumber Gary Kaplan's interest in the trust's assets. *See Drye*, 528 U.S. at 58. Under the terms of the Settlement, Gary Kaplan has certain rights as grantor. (*See supra* at 4-6.) Bahamian law is not necessary to understand the Settlement terms; the document speaks for itself. It is sufficient that *federal* law holds that a grantor's interest is subject to federal tax liens. *See Estate v. O'Connor v. Comm'r*, 69 T.C. 165 (1977) ("When a grantor or other person has certain powers in respect of trust property that are tantamount to dominion or control over such property, the [Internal Revenue] Code 'looks through' the trust form and deems such grantor or other person to be the owner of the trust property and attributes the trust income to such person." (citing 26 U.S.C. § 671 *et seq.*)); *United States v. Grant*, 96 A.F.T.R.2d 2005-6270 (S.D. Fl. 2005) (holding that a grantor's power to change the trustee of a foreign trust at any time was sufficient for U.S. tax liens to encumber the trust's assets and to compel repatriation to the United States).

Because federal tax liens encumber Gary Kaplan's rights as grantor (*i.e.* his rights to property in the Kaplan Family Trust), the United States steps into his shoes and can exercise any right he has or may have as grantor over the Kaplan Family Trust. And because his rights to property include his unilateral power to appoint and remove the Protector at any time for any cause, the United States, by virtue of the federal tax lien,

12

has the right to effectively end the trust at any time. *See Nat'l Bank*, 472 U.S. at 723-27 (holding the United States may levy the value of a jointly held bank account because the delinquent taxpayer had the authority to withdraw the entire account); *Grant*, 96 A.F.T.R.2d 2005-6270 (because the taxpayer had "unreviewable authority, over discharge and appointment of the Trustees, . . . [a] Trustee who declines to abide by her wishes will soon carry the title of ex-Trustee"); (*supra* at 4-6.)

Federal law also determines whether Gary Kaplan's transfers were fraudulent and whether the Trust is Kaplan's nominee or alter ego. *See G.M Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977); *United States v. Patras*, 544 Fed. Appx. 137, 141 n.9 ("Numerous courts have observed that the state and federal law standards for determining whether a titleholder is a nominee are very similar"); *Self Heating and Cooling, Inc. v. Comm'r*, T.C. Memo. 2004-85 (applying Pennsylvania's Uniform Fraudulent Transfer Act to tax liability). There is no reason for this Court to apply the substance of Bahamian law, whatever that may be, to the dispute between the parties.

**II.    UNDER THE PRINCIPLES OF COMITY, THIS COURT CANNOT ADOPT THE BAHAMIAN ORDER TO BIND THE UNITED STATES.**

In addition to seeking application of Bahamian law, Nineveh argues, "under the principles of comity, this Court should adopt the Bahamian Supreme Court's conclusions and apply them to the present action." (Doc. 37-1 at 9.) Nineveh asserts that the Bahamian Order "unambiguously declares the nature of Mr. Kaplan's property rights and interest in relation" to the Kaplan Family Trust and Nineveh. (*Id.* at 3.)

13

Contrary to Nineveh's characterizations, the principles of comity require this Court to reject the application of the Bahamian Order in this case.

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 143 (1895); *Gross v. German Foundation Indus. Initiative*, 456 F.3d 363, 392 (3d Cir. 2006); *Remington Rand v. Bus. Sys. Inc.*, 830 F.2d 1260, 1266 (3d Cir. 1987). The Third Circuit has stated that comity "is not a rule of law, but one of practice, convenience, and expediency," and "does not achieve the force of an imperative or obligation." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 441 (3d Cir. 1971). This formulation aligns with the general proposition that United States courts should give respectful consideration of a foreign sovereign's representations regarding its own laws based on the circumstances, but are not bound to defer to them. *Cf. Bread v. Greene*, 523 U.S. 371, 375 (1998); *accord Sanchez-Llamas v. Oregon*, 548 U.S. 331, 353 (2006).

The Third Circuit stated the governing standard for determining whether to apply a foreign judgment to a case pending in the United States as follows:

> When an action is brought in a court of this country by a citizen of a foreign country against one of our own citizens . . . and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in

> the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect.

*Somportex*, 453 F.2d at 441 (quoting *Hilton*, 159 U.S. at 205-06).

Under this standard, the Bahamian Order cannot be applied in this case against the United States. Although the United States was "invited to participate" in the Bahamian case, the United States was not a party to that proceeding. The United States has not waived its sovereign immunity over suits pending in foreign jurisdictions, like the Bahamas. *See, e.g.*, *Price v. United* States, 174 U.S. 373, 375-76 (1899 ("It is an axiom of our jurisprudence [that the United States] is not liable to suit unless it consents thereto, and its liability in suit cannot be extended beyond the plain language of the statute authorizing it."). There is also no indication that the Bahamian court would have permitted the United States to appear before it. Thus, the Bahamian court did not have "jurisdiction . . . of the parties" as required by the Supreme Court and the Third Circuit. *Somportex*, 453 F.2d at 441 (quoting *Hilton*, 159 U.S. at 205); *see also Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics*, 905 F. Supp. 169, 179 n.9 (S.D.N.Y. 1995) ("when parties currently before an American court were not parties to the foreign action, the Due Process Clause prohibits application of the rule of collateral estoppel against them"). Because the Bahamian court did not have jurisdiction over the United States, comity dictates that the Bahamian Order cannot bind the United States.

In addition, Supreme Court precedent establishes that the Bahamian Order cannot bind this Court's determination of the consequences for federal tax purposes of

15

Gary Kaplan's rights as grantor of the Kaplan Family Trust. In *Commissioner v. Bosch*, the Supreme Court addressed "[w]hether a federal court or agency in a federal estate tax controversy is conclusively bound by a state trial court adjudication of property rights or characterizations of property interests when the United States is not made a party to such proceeding." 387 U.S. 456, 456-57 (1967). The Court concluded such a state court adjudication cannot bind the United States where it was not a party to the suit, unless there was a clear ruling by the highest state court on the issue. *See id.* at 465.

The Supreme Court of the Bahamas, which entered the Bahamian Order, is the trial court level of the Bahamian judicial system. *See* http://www.courtofappeal.org.bs/organization.php. Appeal from the Supreme Court is made to the Court of Appeals. *See id.* Further appeal is made to the Judicial Committee of Her Majesty's Privy Council, which is the highest court in the Bahamas. *See id.* Thus, under *Bosch*, the Bahamian Order cannot bind the United States.

There is also no indication that Gary Kaplan appeared to defend himself in the Bahamian case. The Bahamian Order therefore appears to be akin to a default judgment. Courts are extremely reluctant to adopt foreign default judgments to proceedings in this country. *See, e.g.*, *In re Estate of Bennoon*, 13 N.E.3d 236, 244-45 (Ill. App. Ct. 2014) (affirming order denying comity to order of foreign nation's court, in which foreign court made factual findings relevant to purported heir's claim in state court action, where foreign proceeding was conducted ex parte).

Finally, although Nineveh states the Bahamian court "was fully aware of Defendant's position regarding Mr. Kaplan's rights and interests" in the Kaplan Family

15958994.2

Trust, any such understand appears to have been predicated solely on the United States answer in this case, which does not attempt to substantively explain the United States' position on any of the issues.  (*See* Doc. 37-3.)  For example, the Bahamian Order does not address Gary Kaplan's rights as *grantor* with regard to the Kaplan Family Trust. Rather, the Order states only that the beneficiaries, including Gary Kaplan in his capacity as a *beneficiary*, are not entitled to any distribution or to direct any particular distribution."  (*Id.* at 6-7.)  Thus, the Bahamian Order cannot foreclose any of the United States' legal arguments available to it in this case.

## CONCLUSION

For the foregoing reasons, the Court should deny Nineveh's motion to apply Bahamian law and adopt the Bahamian Order.

DATE: November 6, 2017                             Respectfully submitted,

>                                                  LOUIS D. LAPPEN
>                                                  Acting United States Attorney
>
>                                                  DAVID A. HUBBERT
>                                                  Acting Assistant Attorney General,
>                                                  Tax Division
>
>                                                  */s/ Christopher J. Williamson*
>                                                  CHRISTOPHER J. WILLIAMSON
>                                                  Trial Attorney
>                                                  U.S. Department of Justice, Tax Division
>                                                  Ben Franklin Station, PO Box 227
>                                                  Washington, D.C.  20044
>                                                  Tel/Fax:  (202) 307-2250 / (202) 514-6866
>                                                  christopher.j.williamson@usdoj.gov

<u>Certificate of Service</u>

IT IS CERTIFIED that the foregoing THE UNITED STATES' OPPOSITION TO NINEVEH'S MOTION FOR APPLICATION OF FOREIGN LAW was filed on November 6, 2017, by ECF filing and served thereby on all individuals and entities registered with the Court.

*/s/ Christopher J. Williamson*
Christopher J. Williamson

15958994.2