| NINEVEH INVESTMENTS LIMITED, Plaintiff, | CIVIL ACTION |
|---|---|
| v. | |
| UNITED STATES OF AMERICA, Defendant. | NO. 16-1068 |

DuBois, J.                                                                                    August 13, 2019

## M E M O R A N D U M

### I.      INTRODUCTION

In this action for wrongful levy against the United States under 26 U.S.C. § 7426 of the Internal Revenue Code, plaintiff Nineveh Investments Limited ("plaintiff") seeks reconsideration of that part of the Court's December 5, 2017 Memorandum and Order denying plaintiff's Motion for Application of Foreign Law Pursuant to Federal Rule of Civil Procedure 44.1 by reason of plaintiff's failure to prove the substance of Bahamian law.  In that Order, the Court concluded that plaintiff failed to prove the substance of Bahamian law through its exclusive reliance on a July 6, 2017 Order by a Bahamian court that provided no evidence of the substance of Bahamian law.  Consequently, the Court determined that Pennsylvania law would apply in the case as the law of the forum.

In its Motion for Reconsideration, plaintiff provides additional legal authority in support of its Motion for Application of Bahamian Law.  The Court determines that the interests of justice favor considering plaintiff's supplemental authority on Bahamian law.  The additional authority provides the substance of Bahamian law and enables the Court to apply that law to interpretation of the Kaplan Family Trust.  The Court will apply Bahamian law to that issue.

The Court also concludes that the doctrine of depecage[1] is appropriate in this case and denies without prejudice plaintiff's Motion for Application of Foreign Law with respect to all other issues involved in determining Gary Kaplan's property interest in the Kaplan Family Trust, including the law relating to nominee, alter ego, sham/substance over form, and fraudulent transfer. For the reasons that follow, plaintiff's Motion for Reconsideration is granted in part and denied in part.

## II.    BACKGROUND[2]

This lawsuit arises out of tax levies by defendant United States on the claimed assets of terminated third-party defendant Gary Kaplan ("Kaplan") to satisfy Kaplan's outstanding tax obligations. Kaplan's tax obligations stem from the sale of his shares in BetOnSports, PLC, an overseas gambling operation, in public offerings in 2004 and 2005. In anticipation of the public offerings, Kaplan settled two trusts based in the Isle of Jersey, to which he transferred his shares in BetOnSports. In 2010, Kaplan settled the Kaplan Family Trust ("the Trust") under the laws of the Bahamas as a successor to the two trusts based in the Isle of Jersey. Plaintiff Nineveh is a Bahamian corporation that holds the Trust's financial assets.

### a.   The Terms of the Trust

The Trust grantor, or "settlor," is Gary Kaplan. *See* ECF No. 38-2. The trust beneficiaries are the settlor, Holly Kaplan,[3] the issue of the settlor, and the International Red

---

[1] "'Depecage' refers to the use of the law of different states to resolve different issues in the same case." *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 342 (3d Cir. 2000).
[2] The facts are drawn from this Court's Memorandum and Order dated December 5, 2017, denying plaintiff's Motion for Application of Foreign Law. *Nineveh Investments Ltd. v. United States*, No. 16-1068, 2017 WL 6017681 (E.D. Pa. Dec. 5, 2017). The Court repeats only those facts necessary to explain its ruling.
[3] Holly Kaplan is Gary Kaplan's ex-wife.

Cross and other such charitable organizations.  *Id.* at 14 ¶¶ 1–4.  The Trust protector[4] is

Michael Hunter, a lawyer located in Israel.  *See* ECF No. 37-1.  Below, the Court details the

relevant Trust terms related to the settlor, protector, and trustees.

### i.  Powers of Settlor

Section 6.3 of the Trust grants the settlor (Kaplan) the power "to appoint any successor

or additional Protector."  ECF No. 38-2 § 6.3.  Section 6.13 states that "[n]otwithstanding

anything in this Clause 6 to the contrary, the Settlor during his lifetime and while he is not

Incapacitated shall have the power to remove Protectors, with or without cause, and to appoint

replacements for Protectors so removed."  *Id.* § 6.13.

### ii.  Powers of Protector

The Trust terms provide for a protector with broad powers over the administration of

the Trust.  Section 12.1 of the Trust provides that "[t]he power of removing Trustees and

appointing new or additional Trustees shall be vested in the Protector for the time being

hereof," and under Section 12.3, that power of removal "shall be exercisable without any

reason being given for such removal."  *Id.* §§ 12.1, 12.3.  The Protector also has the power,

*inter alia*, "to consent to changes in class of Beneficiaries," "to consent to early termination of

the Trust Period," and to direct "the Trustees [to] pay or apply the whole or any part of [sic]

parts of the income or capital of the Trust Fund for the benefit of all or any one or more

exclusive of the other or others of the Beneficiaries."  *Id.* at 15 ¶ 1.

Furthermore, under Section 6.7 of the Trust, "[n]o person acting as Protector shall owe

any fiduciary duty to, or be accountable to, any Beneficiary of any Trust, or to the Trustees, in

---

[4] "Generally, a trust protector is a disinterested third party whom the settlor appoints to represent his or her best
interests in the administration of the trust."  George Gleason Bogert, et al., *The Law of Trusts and Trustees*: *Trust
Protectors*, § 137 (2019).  "Unlike trustees, trust protectors are not vested with title.  Rather, a trust protector is
essentially an agent for the settlor and directs and approves the actions of trustee(s)."  *Id.*

relation to the powers of the Protector, as such, hereunder, it being the intention that in the absence of fraud, each Protector will be free from any liability whatsoever relating to the Protector's acts as Protector." *Id*. § 6.7.

The Trust terms also limit the protector's power by directing that "no Beneficiary may be a Protector" and "[n]o Protector shall participate in any decision to consent to any decision of the Trustees to pay income or capital to or for the benefit of himself." *Id*. § 6.10.

### iii. *Powers of Trustees*

Finally, trustees are authorized to make distributions and otherwise dispose of the trust's assets and to end the trust at any time. *Id*. § 1.6. Additionally, Section 11 explains that "Trustees may (with the consent of the Protector) pay out of the capital or income of the Trust Fund any taxes of any kind which become payable (whether or not enforceable) anywhere in the world in respect of any part of the Trust Fund or its income either by the Trustees or by any person who has transferred property to this Trust or by any Beneficiary notwithstanding that the payment of taxes may be prejudicial to one or more of the Beneficiaries." *Id*. § 11.

### b. Procedural History

In 2014, the United States Tax Court ruled that Kaplan earned taxable income from the 2004 and 2005 sales of his shares in BetOnSports. Consequently, on February 24, 2016, the Internal Revenue Service ("IRS") placed levies on assets transferred by Kaplan to plaintiff.

On March 4, 2016, plaintiff Nineveh filed suit in this Court, alleging that the levied assets were not taxable property belonging to Kaplan, but only to plaintiff and the Trust. The Complaint set forth a single count, for wrongful levy, and sought return of the levied assets, with interest and costs. Plaintiff also filed suit in the Bahamian Supreme Court, a trial-level tribunal, against Kaplan for determination of "the rights of the discretionary beneficiaries" of

the Trust. The United States was invited to "participate" in the Bahamian proceedings but declined to do so. On July 6, 2017, the Bahamian Supreme Court issued an Order ("July 6, 2017 Order"), ruling that the levied assets "do not form a part of the personal assets of Gary Kaplan."

On October 23, 2017, plaintiff filed a Motion for Application of Foreign Law Pursuant to Federal Rule of Civil Procedure 44.1. Plaintiff urged this Court to adopt the July 6, 2017 Order as evidence of the substance of Bahamian law pursuant to Rule 44.1 or, in the alternative, to adopt that Order under principles of international comity. This Court denied plaintiff's Motion for Application of Foreign Law in a December 5, 2017 Memorandum and Order. In that Memorandum and Order, the Court concluded that plaintiff had failed to prove the substance of Bahamian law under Rule 44.1 and the United States' immunity to suit in foreign courts precluded adoption of the July 6, 2017 Order under principles of comity. The Court also determined that because plaintiff had failed to prove the substance of foreign law, Pennsylvania law, the law of the forum, governed the case, pursuant to Third Circuit precedent.

Plaintiff now seeks reconsideration of the December 5, 2017 Memorandum and Order. Plaintiff filed its Motion on December 17, 2017, and the United States responded on January 9, 2018. A reply and sur-reply were filed on January 23, 2019, and January 29, 2019, respectively. After unsuccessful settlement discussions, the parties submitted additional briefing on choice of law issues and the substance of Bahamian law (Document No. 65, filed August 10, 2018; Document No. 66, filed September 17, 2018; Document No. 69, filed October 15, 2018, and Document No. 70, filed November 12, 2018).

Plaintiff's Motion is now ripe for decision.

## III.    LEGAL STANDARD

Only three situations warrant granting reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The moving party has the burden of establishing one of these grounds. *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). The grant or denial of reconsideration lies within the discretion of the district court. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

The scope of a motion for reconsideration is "extremely limited" and should not be used to relitigate the case. *Blystone*, 664 F.3d at 415. A motion for reconsideration "addresses only factual and legal matters that the Court might have overlooked." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal citation omitted). "It is improper on a motion for reconsideration to ask the Court to rethink what it already thought through—rightly or wrongly." *Id.* (citation omitted).

## IV.    DISCUSSION

In its Motion and subsequent submissions, plaintiff argues that the Court should reconsider its December 5, 2017, Memorandum and Order in light of plaintiff's supplemental evidence of Bahamian law. Plaintiff contends that its submissions adequately prove the substance of Bahamian law and that Supreme Court precedent requires application of Bahamian law to the case. Mem. L. Supp. Mot. Recons. 2–3. The United States responds that the Court should not consider plaintiff's additional evidence of Bahamian law, plaintiff's analysis of Bahamian law is incorrect, and under a federal choice of law analysis, the Court

should apply Pennsylvania law.  U.S.' Opp'n to Nineveh's Mot. Recons. 5; U.S. Mem. Regarding C.O.L. & Substance Applicable Bahamian L. ("U.S. Mem. C.O.L.") 17.

For the reasons stated below, the Court will consider the parties' additional evidence of Bahamian law.  Specifically, the Court will determine whether the substance of Bahamian law has been proven on an issue-by-issue basis and will apply the doctrine of depecage.  The Court concludes that (1) plaintiff has met its burden of proving foreign law as to the issue of interpretation of the Trust; (2) plaintiff has not met its burden of proving foreign law as to other issues in the case, and the Court thus assumes that Bahamian law is the same as the law of the forum as to those issues; (3) under Supreme Court precedent, the Court must apply Bahamian law to determine the scope of Kaplan's rights in the property that the United States seeks to levy.

### a.  Consideration of Additional Evidence of Foreign Law

Plaintiff contends that the Court should consider its additional evidence of foreign law in deciding its Motion for Reconsideration.  Mem. L. Supp. Mot. Recons. 7–9.  The Court agrees.

In its original Motion for Application of Foreign Law, plaintiff submitted only the July 6, 2017 Order ruling that the levied assets "do not form a part of the personal assets of Gary Kaplan," but that "Order provides no evidence of the substance of Bahamian law.  It simply recites that court's findings without quoting or discussing the law it purports to apply." *Nineveh Investments Ltd. v. United States*, No. 16-1068, 2017 WL 6017681, at *2 (E.D. Pa. Dec. 5, 2017).

Plaintiff argues that the Court should consider additional evidence of Bahamian law not provided to the Court in the initial Motion for Application of Foreign Law in order to avoid

"the manifest injustice that would result if the interests of [plaintiff and the Trust] were unfairly subjected to the laws of a jurisdiction that has no interest in this action, the parties to the dispute, or the [subject] property."  Mot. Recons. 9.

The United States responds that plaintiff "was well aware of, but chose not to comply with, its obligations under Rule 44.1."  U.S.' Opp'n to Nineveh's Mot. Recons. 5.

Although "[i]t is not the job of courts deciding motions for reconsideration to rescue parties from their strategic litigation choices," *Conway v. A.I. duPont Hosp. for Children*, No. 04-4862, 2009 WL 1492178, at *7 (E.D. Pa. May 26, 2009), it is "not consistent with the wise exercise of discretion for the District Court to . . . decline[ ] even to consider" an issue because the parties raised it for the first time on reconsideration, *Oetting v. Heffler, Radetich & Saitta, LLP*, No. 11-4757, 2017 WL 6450557, at *7 (E.D. Pa. Dec. 18, 2017) (DuBois, J.) (citing *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677–78 (3d Cir. 1999)).

The Court determines that in this case, following *Max's Seafood*, it will consider the additional evidence of Bahamian law notwithstanding the fact that it was raised for the first time by motion for reconsideration.  *See, e.g.*, *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 126 F. Supp. 2d 937, 939 n.1 (E.D. Pa. 2001) (considering legal authority raised for the first time in motion for reconsideration).

### b.  Proving Foreign Law

Having decided to consider the additional evidence of foreign law, the Court must determine whether plaintiff has met its burden of adequately proving foreign law so as to enable the Court to consider applying it in this case.  The Court concludes that plaintiff has done so with respect to the issue of interpretation of the terms of the Trust, but not as to the other issues involved in determining Kaplan's property interest in the Trust.

Under Federal Rule of Civil Procedure 44.1, "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Fed. R. Civ P. 44.1. The party seeking to apply foreign law "carr[ies] both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case." *Bel-Ray Co. v. Chemrite (Pty) Ltd*., 181 F.3d 435, 440 (3d Cir. 1999). The moving party has "the burden of establishing [foreign] law and showing that it differs from United States law." *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 218 (3d Cir. 2006). "Where parties fail to carry the burden of proving foreign law, courts 'will ordinarily apply the forum's law.'" *Id.* at 216.

Foreign law usually is established through "written or oral expert testimony accompanied by extracts from foreign legal material." *Estate of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232, 240 (D.D.C. 2012). Rule 44.1 "provides courts with broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so." *Ferrostaal, Inc*., 447 F.3d at 216; *see also Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1869–70 (2018) ("As [t]he court's determination must be treated as a ruling on a question of law [under Rule 44.1], the court may engage in its own research and consider any relevant material thus found.") (internal quotations omitted).

For purposes of the Rule 44.1 analysis, the relevant part of the experts' evidence is the law upon which the experts rely, not their ultimate legal conclusions. *Estate of Botvin*, 873 F. Supp. 2d at 240 ("Such expert testimony is intended to aid the court in determining the content of the law, not in applying that law to the facts of the case."). "Where the law is unsettled or unclear, an American court must determine how a [foreign] court . . . would rule on the law upon which the defendant seeks to rely." *Republic of Ecuador v. ChevronTexaco Corp*., 499 F.

Supp. 2d 452, 460 (S.D.N.Y. 2007). Under the federal tax lien statute, the Court "look[s]

initially to state law to determine what rights the taxpayer has in the property the Government

seeks to reach." *United States v. Craft*, 535 U.S. 274, 278 (2002).

Plaintiff asks this Court to apply the state law of the Bahamas in determining Kaplan's

substantive property interest in the Trust. In doing so, it must first prove the substance of

Bahamian law.

Both parties have submitted extensive expert reports on the extent of Kaplan's property

interest in the Trust as interpreted under Bahamian law. Specifically, plaintiff submitted the

legal opinion and two supplemental legal opinions of Brian C. Simms Q.C., a Bahamian

attorney who regularly serves as an expert witness on matters of Bahamian law. The United

States submitted the expert report and supplemental expert report of Professor Jonathan Harris,

an English professor with specialized expertise in cross-border trusts. Simms opines that

Kaplan does not have a property interest under Bahamian law; Harris concludes that Kaplan is

the beneficial owner of the Trust property under Bahamian law.

The parties, through their experts, raise several legal issues relevant to the determination

of Kaplan's property interest in the Trust: (1) discretionary beneficiaries, (2) de facto

revocability, and (3) unwaivable fiduciary duties. The Court summarizes each legal issue in

turn.

### i. Discretionary Beneficiaries

The parties agree that under Bahamian law, "discretionary beneficiaries, even those

who are also settlors like Kaplan, do not have any proprietary interest in a trust's assets." U.S.

Mem. C.O.L. 9. This position is consistent with United States law. *See N. Carolina Dep't of

Revenue v. The Kimberley Rice Kaestner 1992 Family Tr.*, 139 S. Ct. 2213, 2223 (2019)

(holding discretionary beneficiaries had no property interest in trust assets). Thus, Kaplan's status as a discretionary beneficiary does not create an attachable property interest in the Trust under Bahamian law.

### ii.  *De Facto Revocability*

A trust can be de facto revocable such that the settlor retains beneficial ownership over the trust property if a settlor retains extensive powers over a trust. *Tasarruf Mevduati Sigorta Fonu v. Merrill Lynch Bank & Anor* [2011] UKPC 17, [2012] 1 W.L.R. 1721. The parties dispute whether, under Bahamian law, a settlor who retains powers permitted by the Bahamian Trustee Act renders a trust de facto revocable. The Trustee Act expressly provides that "[t]he retention, possession or acquisition by the settlor of any one or more of the matters referred to in subsection (2) shall not invalidate a trust or the trust instrument." Trustee Act, 1998, c. 176 § 3(1) (Bah.). These powers include "any powers to appoint, add or remove any trustees, protectors or beneficiaries" and "any powers to revoke the trust or the trust instrument or any trusts or powers granted thereby, or to withdraw property from the trust." *Id.* § 3(2)(a)&(d).

Simms, plaintiff's expert, contends that the express language of the Trustee Act is dispositive—that a settlor retaining powers enumerated under the Act does not invalidate a trust. Legal Opinion of Brian C. Simms, QC ¶ 32. He opines that "because the Trustee Act expressly provides that a settlor's power to appoint or remove protectors shall not invalidate a trust, Mr[.] Harris's opinion that the trust fails due to the settlor's retaining this power is . . . fundamentally at odds with the [controlling] Trustee Act." Supplemental Legal Opinion of Brian C. Simms QC ("Simms Supp. Op.") ¶ 10.

Harris, the United States' expert, disagrees, arguing that "Section 3 [of the Trustee Act] does not have anything to say about, and does not affect, the degree of control which a settlor is

able to exercise over a trust's assets," and that Section 3(1) merely provides that the inclusion of any power listed in Section 3(2) does not necessarily invalidate a trust. Expert Report of Professor Jonathan Harris QC ("Harris Rep.") ¶¶ 91, 94. Harris opines that, notwithstanding Section 3, a settlor can retain beneficial ownership over a trust's assets. In support of his position, Harris relies upon *Tasarruf*, a precedential case from the Privy Council with binding authority over the Bahamas, which analyzed a Cayman Islands trust and held that a settlor's power of trust revocation was "not a fiduciary power and was in equity tantamount to ownership." *Id*. at 89–90 (citing *Tasarruf Mevduati Sigorta Fonu v. Merrill Lynch Bank & Anor* [2011] UKPC 17, [2012] 1 W.L.R. 1721). Harris also relies on an English trial court decision, *Pugachev*—a persuasive authority for Bahamian courts[5]—ruling that a settlor serving as protector who also had the power to remove trustees without cause had non-fiduciary powers "so substantial that the settlor remained in control of the trust assets." *Id*. at ¶ 88 (citing *JSC Mezhdunarodniy Promyshlenniy Bank & Anor v Pugachev & Ors* [2017] EWHC 2426 (Ch)). Finally, the United States cautions that "if Nineveh's reading of the statute were correct, it is hard to imagine that any trust would be invalid given the scope of terms discussed in section 3. Such a result surely could not have been contemplated." U.S. Reply Supp. Mem. Regarding C.O.L. & Substance Applicable Bahamian L. ("U.S. Mem. Reply") 27.

Plaintiff responds that *Pugachev* is an "outlier" decision and cites commentary concluding that the decision "sits uneasily with established case law in the area." Pl.'s Resp. U.S.A's Mem. Regarding C.O.L. & Substance Bahamian L. ("Pl.'s Resp. U.S. Mem.") 3, 24 n. 19. For example, one commentator characterized *Pugachev* as employing "questionable" reasoning and concluded "there is a strong argument that the decision is incorrect." *See* Jack

---

[5] Harris mistakenly asserts that English trial court decisions are binding on Bahamian courts. *See* Simms Second Supp. Op. ¶¶ 4–12, 15–19; *see generally De Lasala v De Lasala*, [1980] A.C. 546.

Davies, *New Developments in Settlor Reserved Powers*, 2 Conveyancer & Prop. L. 175, 183 (2018).

Additionally, contrary to the United States' position, *Tasarruf* does not provide clear guidance on interpretation of trust validity under the Bahamas Trustee Act. Both parties agree that "Bahamian law will follow English common law unless it has been modified by statute," and that the Bahamas has supplemented trust common law with the Trustee Act. *See* U.S. Mem. C.O.L. 18; Pl.'s Sur-Reply to U.S. Mem. 8-9. The Trustee Act expressly provides that a settlor's power of revocation shall not invalidate the trust. Trustee Act § 3(2)(a). Because *Tasarruf* interpreted a Trust under the law of the Cayman Islands and did not consider the Bahamas Trustee Act, a Bahamian court could consider the opinion inapplicable to interpreting trust validity under the Trustee Act.

Simms' Second Supplemental Opinion cites *Banque Privee Edmond de Rothschild Ltd v. Dominique Queirazza Leday,* 2013/CLE/gen/01699 (Apr. 16, 2015), a Bahamian case that squarely addresses the issue of trust validity. Simms Second Supp. Op. ¶¶ 41–42. In *Banque Privee Edmond de Rothschild Ltd*, Judge Isaacs of the Bahamas Supreme Court (a Bahamian trial court) rejected the argument that a settlor's retention of the power to revoke the trust in conjunction with the retention of other powers permitted in Section 3 of the Bahamas Trustee Act invalidated the trust. *Banque Privee*, ¶¶ 27–28. Instead that court held that under Section 3, retention of those powers did not invalidate the trust. Simms Second Supp. Op. ¶¶ 41–42.

Finally, in considering the construction of the Bahamas Trustee Act, the Court also notes that "[t]he Trustee Act was a piece of legislation giving trust officers greater flexibility, rather than imposing new duties on them. . . . Part III of the Trustee Act gives trustees extremely broad powers. That this was the purpose of the Trustee Act is hardly surprising: The

Bahamas is a leading trusts jurisdiction . . . The Bahamas can only remain competitive in such a marketplace if it makes it easier for trusts to operate there."  Supplemental Expert Report of Professor Jonathan Harris QC ("Supp. Harris Rep.") ¶ 26(b).  The United States' contention that plaintiff's construction gives an impermissibly broad reading to the Act is unpersuasive in light of the Act's legislative purpose.  *See, e.g.*, Christopher McKenzie, *Having and Eating the Cake: A Global Survey of Settlor Reserved Power Trusts: Part 2*, 6 Private Client Bus. 428, 437 (2007) (observing that "the remarkably wide provisions of [Section 3(2) of the Trustee Act] . . . would appear . . . to provide that a Bahamian trust would not be testamentary even if the settlor is absolutely entitled to both capital and income").

Upon consideration of the legal sources set forth above, the Court concludes that, under Bahamian law, a trust would not be de facto revocable or invalid based on powers expressly permitted to settlors under Section 3 of the Bahamas Trustee Act.

However, this conclusion does not end the inquiry.  As the Supreme Court cautioned, "[i]n looking to state law, [courts] must be careful to consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them."  *United States v. Craft*, 535 U.S. 274, 279 (2002).  "Such state law labels are irrelevant to the federal question of which bundles of rights constitute property that may be attached by a federal tax lien."  *Id*.  Accordingly, the Court looks beyond the state law characterization and "look[s] instead to the realities of the [taxpayer's] interest."  *Id*.  The scope of the settlor's powers under the terms of the trust are relevant for determining the extent of property that may be attached by a federal tax lien, regardless of their impact on trust validity under Bahamian law.  Thus, the Court's ultimate determination of Kaplan's attachable property interest will

focus on his substantive *powers* under the terms of the Trust, not the characterization of those powers under Bahamian law.

### iii. Unwaivable Fiduciary Duties

The parties also disagree as to whether, under Bahamian law, all fiduciary duties may be waived by the express terms of a Trust. This dispute is particularly important in determining whether Kaplan's power to remove the protector "with or without cause" is a fiduciary power, and whether the protector has fiduciary obligations notwithstanding the Trust's proclamation that "[n]o person acting as Protector shall owe any fiduciary duty to, or be accountable to, any Beneficiary of any Trust, or to the Trustees, in relation to the powers of the Protector . . . it being the intention that in the absence of fraud, each Protector will be free from any liability whatsoever relating to the Protector's acts as Protector." ECF No. 38-2 § 6.7.

Harris opines that "powers which may sometimes be fiduciary in nature can cease to be so if the trust instrument so provides." Harris Rep. ¶ 75. According to Harris, "[i]t is a question of construction of the particular trust deed as to whether or not a particular power of a protector is fiduciary." *Id.* ¶ 68, *In Re the Bird Charitable Trust and the Bird Purpose Trust*, [2008] JRC 13, ¶82; *see also* citing *JSC Mezhdunarodniy Promyshlenniy Bank & Anor v. Pugachev & Ors* [2017] EWHC 2426 (Ch) ("A protector has whatever powers and duties are conveyed by the deed on its true construction." (*citing Clayton v Clayton* [2016] NZSC 29)).

Simms disagrees, and asserts that even when a trust expressly "provides that a Protector is not liable to beneficiaries in a fiduciary capacity, Bahamian law recognizes certain fiduciary powers that cannot be disclaimed." Simms Supp. Op. ¶ 20. Simms proffers several arguments in support of his position.

First, Simms argues that Section 81(3) of the Bahamas Trustee Act creates a duty to act *bona fide*. *Id*. ¶¶ 55–57. Section 81(3) provides that "A person exercising any one or more of the powers set forth . . . shall not by virtue only of such exercise be deemed to be a trustee and, unless otherwise provided in the trust instrument, is not liable to the beneficiaries for the *bona fide* exercise of the power." Trustee Act, 1998, c. 176 § 81(3) (Bah.). Harris disagrees, arguing that the provision is an exculpatory clause. Supp. Harris Rep. ¶ 26(a). He further notes that the language "unless otherwise provided in the trust instrument" renders the provision subject to the express terms of the trust instrument. *Id.* ¶ 26(c).

The Court agrees with Harris's analysis and concludes that Section 81(3) does not create any independent duty with respect to the *bona fide* exercise of power.

Second, Simms argues that under English common law, certain fiduciary powers under the terms of a trust can never be disclaimed. Simms Supp. Op. ¶¶ 20–32. He argues that "numerous authorities . . . have construed provisions [disclaiming any fiduciary duty] and concluded that a protector must nevertheless consider the interests of all beneficiaries when exercising his discretion in relation to any power which he holds which affects the administration of a trust." *Id*. ¶ 21. Specifically, he notes that a Bermuda trial and appellate court held that a protector had an obligation to pass information received from trustees to beneficiaries despite the trust deed providing that "The Protector shall not owe any fiduciary duty towards and shall not be accountable to any person or persons . . ." *In the Matter of an Application for Information about a Trust* [2013] CA (Bda) 8 Civ. He also notes that a Jersey court held that, notwithstanding a clause providing "For the avoidance of doubt, it is hereby declared that no power is vested in the protector in a fiduciary capacity," if the protector chose to exercise his powers, he was subject to a doctrine called "fraud on a power." *In Re VR*

*Family Trust, Center Trustees CI Ltd v Van Rooyen* [2009] JRC 109 ¶¶ 25, 27.   Finally, Simms

relies on *Kea Trust Co Ltd v. Pugachev*[6] [2015] NZHC 241, which notes that "it is unlikely that

the court will allow [judicial] supervision to be avoided by language purporting to free the

protector from any fiduciary obligations, but, again the touchstone is always the settlor's

objectively determined intention."

While Simms has provided evidence that the express renunciation of a protector's

fiduciary duties in a trust instrument may constrain the protector's behavior in some

circumstances, he does not establish that a protector has certain fiduciary powers that can never

be disclaimed.  To the contrary, as *Kea Trust* instructs, "the touchstone is always the settlor's

objectively determined intention."  *Id.*  The construction of "the settlor's objectively

determined intention" will necessarily depend upon the express terms of the trust.

The United States also correctly notes that the "discussion of *bona fide* and fraud on

power is a red herring."  U.S. Mem. Reply 22.  As the Supreme Court of the United Kingdom

recently explained, "[the doctrine of fraud on a power] has nothing to do with fraud."  *Eclairs*

*Group Ltd v JKX Oil & Gas Plc*, [2016] B.C.C. 79.  Rather, "fraud on a power":

> does not necessarily denote any conduct on the part of the appointor amounting
> to fraud in the common law meaning of the term or any conduct which could be
> properly termed dishonest or immoral.  It merely means that the power has been
> exercised for a purpose, or with an intention, beyond the scope of or not justified
> by the instrument creating the power."

*Id.* (*citing Vatcher v. Paull* [1915] A.C. 372, 378).  As long the protector acts within the scope

of his designated power, he is acting in good faith and avoids committing a "fraud on a power."

Thus, the fraud on a power doctrine does not meaningfully constrain a protector where the

---

[6] This is a different *Pugachev* case than *JSC Mezhdunarodniy Promyshlenniy Bank v Pugachev*, relied upon by the
United States.

express terms of a trust provide that that the scope of his designated power is not limited by fiduciary obligations.

Finally, Simms contends, and Harris agrees, that trustees are fiduciaries. Simms Supp. Op. ¶ 37; Supp. Harris Rep. ¶ 63(a). However, Simms argues that "certain powers are powers arising from 'irreducible core duties . . . such that these powers can only be exercised in a fiduciary manner," whereas Harris opines that "terms of the specific trust at issue determine what amounts to doing a settlor's bidding in breach of trust and what is a proper exercise of a trustee's duty." Simms Supp. Op. ¶ 35; Supp. Harris Rep. ¶ 63(c). The Court concludes that the nature of the fiduciary obligation will depend on the language of the trust instrument. *See Clayton v. Clayton*, [2016] NZSC 29, ¶¶ 56-65 (holding that the extent of a trustee's fiduciary obligations to trust beneficiaries "has to be evaluated against a background of a number of provisions of the [trust] deed that modify the duties imposed on the Trustee.").

In short, under Bahamian law, the determination of whether a power is fiduciary depends on the settlor's objectively determined intention as informed by the terms of the trust. The scope of a particular duty depends upon the trust instrument in which the power was granted.

### iv. Substance of Foreign Law

The Court determines, based on the parties' submissions and its independent research, that parties have adequately proven the substance of Bahamian law for the Court to apply the applicable law in interpreting the Trust instrument. However, plaintiff has not proven the substance of Bahamian law with respect to the United States' theories that Kaplan has an attachable property interest in the Trust under the doctrines of nominee/alter ego, fraudulent transfer, and sham/economic substance.

Based on the foregoing, the Court determines that, under Bahamian law, a court would apply the following legal principles. First, a discretionary beneficiary does not have any property interest in a trust's assets. Second, a trust is not invalid when a settlor retains powers expressly permitted under Section 3(2) of the Bahamas Trustee Act. Third, the determination of whether a power is fiduciary depends on the settlor's objectively determined intention as informed by the terms of the trust, and fourth, the scope of a particular duty will depend upon the trust instrument in which the power was conferred.

The Court does not find persuasive the July 6, 2017 Order by the Bahamas Supreme Court, which did not explain which principles of Bahamian law that it was applying and solely considered the property rights and powers of Kaplan as a *beneficiary*, not as *settlor*. *See Nineveh Investments Ltd.*, No. 16-1068, 2017 WL 6017681, at *2 (E.D. Pa. Dec. 5, 2017) (explaining that the July 5, 2017 Bahamian Court Order does not assist the Court in determining the substance of Bahamian law because "[i]t simply recites [its] findings without quoting or discussing the law it purports to apply.").

The United States argues that it is not enough for plaintiff to prove the substance of foreign law. The United States contends that plaintiff's burden under Rule 44.1 requires plaintiff to both "show the substance of applicable law *and* explain how such law conflicts with Pennsylvanian law." U.S. Opp'n Nineveh's Mot. Recons. 7 (emphasis in original). The United States relies on the Third Circuit's decision in *Ferrostaal*, which concluded that the moving party "had the burden of establishing Tunisian law and showing that it differs from United States law." *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 218 (3d Cir. 2006). Because Ferrostaal failed to carry its burden, the Court "assume[d] that Tunisian law is the same as United States law." *Id.*

Plaintiff asserts "that there are important differences between Pennsylvania and Bahamian law with respect to the property interests of Mr. Kaplan in the assets of the [Kaplan Family Trust], and with regard to the primary defense asserted by the Government." Pl.'s Reply Supp. Mot. for Recons. ("Pl.'s Mot. Recons. Reply") 5. Specifically, plaintiff states

> Pennsylvania law . . . does not appear to have addressed whether a trust protector is a fiduciary, nor whether a settlor's power to remove and appoint a trust protector is a fiduciary power. Indeed, counsel for Nineveh was unable to locate any Pennsylvania authority that addresses the implications of a settlor retaining the authority to appoint a trust protector in a trust agreement.

*Id.* at 6. The United States responds that "Nineveh does not explain [why] Pennsylvanian law, including, for example, the Uniform Fiduciaries Act, 7 Pa. Stat. § 6351 et seq., cannot address issues related to protectors. It also does not explain how any such law conflicts with Bahamian law." U.S. Sur-Reply Opp'n to Nineveh's Mot. Recons. 3.

The Court is not persuaded by the United States' argument. Plaintiff's burden is to show that foreign law *differs* from domestic law, not to show that the laws *conflict*. The conflict of laws analysis is separate from the Rule 44.1 analysis and occurs only after the Court determines that parties have met their burden of proving foreign law. *See Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999). The Court concludes that plaintiff's argument that the Pennsylvania law does not address trust protectors, whereas such protectors are explicitly addressed in the Bahamas Trustee Act, adequately satisfies its burden under Rule 44.1 of showing that Pennsylvania and Bahamian law differ with respect to interpretation of the Trust instrument.

### c. Depecage

The United States argues that the Court should apply the doctrine of depecage to this action. "'Depecage' refers to the use of the law of different states to resolve different issues in

the same case." *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 342 (3d Cir. 2000). The United States contends that depecage should be applied in this case because plaintiffs have only provided the substance of Bahamian law as to issues related to interpretation of the Trust instrument. U.S. Mem. C.O.L. 6. It is the position of the United States that plaintiff has not met its burden of proving Bahamian law related to a number of additional legal issues, such as the law related to the doctrines of nominee/alter ego, fraudulent transfer, and sham/economic substance. *Id*. at 8–9.

Plaintiff disagrees with the United States on this issue, contending that it "has adequately explained the Bahamian law it contends should apply in this case," and "it does not have the burden to anticipate all of the defenses the Government might raise in this action and to describe how Bahamian law would apply." Pl.'s Resp. U.S. Mem. 20-21. In its fourth submission in support of its motion for reconsideration, plaintiff provided "basic principles of Bahamian law" related to the United States' defenses, relying on Simms' second supplemental legal opinion. Pl.'s Sur-Reply to U.S. Mem. 8 (citing Simms Second Supp. Op. ¶¶ 50–59). However, plaintiff maintains that it is not required to prove the substance of legal issues raised by the United States' defenses at this stage in the litigation.

The United States is correct that plaintiff bears the burden of proving the substance of Bahamian law on any issue the Court may be required to address. Proof of Bahamian law as to one relevant issue does nothing to assist the Court in applying Bahamian law to a separate issue for which the substance of foreign law is not established. While Simms' report provides a cursory overview of Bahamian legal principles with regard to the doctrines of shams, fraudulent dispositions, alter ego claims, and nominee/bare trusts, plaintiff does not attempt to show that these legal principles differ from Pennsylvania law. The Court concludes plaintiff

has not met its burden under Rule 44.1 with respect to these issues. The Court thus assumes that Bahamian law on these issues is the same as Pennsylvania law. *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 218 (3d Cir. 2006).

Although plaintiff has proven the substance of foreign law with respect to interpretation of the Trust instrument, it has not done so for the other legal issues presented in the case. Therefore, the Court determines that the doctrine of depecage applies and that consideration of whether Bahamian law will apply to the issue of interpretation of the terms of the Trust instrument is separate from consideration of the applicable law to other issues such as nominee/alter ego, fraudulent transfer, and sham/economic substance, under which the United States contends that Kaplan has an attachable property interest in the Trust. This ruling is without prejudice to plaintiff's right to provide proof of foreign law as to other such issues at a later stage in the proceedings.

### d. Choice of Law Analysis

Once foreign law is adequately proven, "a conflict of laws analysis [is required] to determine which state had the weightier interest in having its law apply in resolving the relevant issue." *Bel-Ray Co. v. Chemrite Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999). Plaintiff argues that the choice of law analysis is "subject to—and limited by—binding precedent from the U.S. Supreme Court." Pl.'s Resp. U.S.'s Mem. 7. Specifically, plaintiff argues that for the purposes of construing property against which a federal tax lien may attach, "the U.S. Supreme Court had mandated that a court apply the law of the jurisdiction where the rights at issue were created in order to assess the nature of those rights." *Id*. at 8. The Court agrees with plaintiff.

When considering property rights for the purposes of federal tax liens, courts "look initially to state law to determine what rights the taxpayer has in the property the Government

seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *United States v. Craft*, 535 U.S. 274, 278 (2002). The Supreme Court explains that the "initial look" to state law involves examining "the individual rights created by these state law rules." *Id*. at 282. In light of this Supreme Court directive, the Court concludes that it must apply the law of the state in which the individual rights were created.

In this case, the Trust was created under Bahamian law. Accordingly, the Court will first look to Bahamian law to determine what rights the taxpayer has in the property the United States seeks to reach and will not conduct a further choice of law analysis. However, the Court will only apply Bahamian law when the substance of that law has been adequately proven. For those issues as to which the substance of Bahamian law has not been proven, the Court will assume that the foreign law is the same as the law of the forum and will apply Pennsylvania law.

Accordingly, with respect to the issue of the interpretation of the Trust instrument—as to which plaintiff has proven the substance of Bahamian law—the Court will apply Bahamian law. For all issues other than interpretation of the Trust instrument, because of plaintiff's failure to prove Bahamian law, the Court assumes that Bahamian law is the same as Pennsylvania law.

## V. CONCLUSION

Plaintiff's motion for reconsideration is granted in part and denied in part. That part of the Motion seeking application of Bahamian law to the issue of interpretation of the Trust instrument is granted. That part of the Motion seeking application of Bahamian law to all other issues involved in determining Kaplan's property interest in the Trust is denied.

An appropriate Order follows.